UNITED STATES of America

v.

Edward William LANCER, Appellant.

No. 73–1795.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1973.

Reargued Sept. 13, 1974.

Decided Jan. 30, 1975.

Forman, Circuit Judge, dissented and filed opinion which was partly concurred in by Seitz, Chief Judge.

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Chief, App. Section, Asst. U. S. Atty., Alan M. Lieberman, Thomas E. Mellon, Jr., Asst. U. S. Attys., Philadelphia, Pa., for appellee.

David Kanner, Kanner, Stein & Barol, Philadelphia, Pa., for appellant.

Argued Dec. 13, 1973.

Before FORMAN, HUNTER and GARTH, Circuit Judges.

Reargued Sept. 13, 1974.

Before SEITZ, Chief Judge, and FORMAN, VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal requires us to examine the validity and interrelationship of sen-

tences[1] imposed upon the petitioner under 18 U.S.C. §§ 3651,[2] 3653[3] and 4208.[4]

1. The action was initiated by a motion to vacate sentence under 28 U.S.C. § 2255 which alleged that the sentence and the probation imposed was illegal and excessive. In the original motion papers filed by Petitioner, (at that time, *pro se*) the ultimate relief sought was: "discharging petitioner of any and all periods of probation in the Eastern District of Pennsylvania[;] . . . withdrawing the warrant for Violation of Probation, issued by the Court on October 13, 1970; [sic October 9, 1970] and discharging Petitioner from any/all further prosecutions on Indictment Nos. 22119, 22172, 22173, 22153, 22163, 22164, 22160, 222[3]8 . . . ."

The order entered by the court directing the issuance of a warrant for violation of probation is dated October 9, 1970. The *arrest* warrant issued to the United States Marshal pursuant to the October 9th order is dated October 13, 1970. As a result of this warrant a detainer was placed against Lancer's release from Leavenworth Penitentiary on April 26, 1972.

2. At the time Lancer was sentenced in 1965, 18 U.S.C. § 3651 provided in relevant part:

§ 3651. Suspension of sentence and probation

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months, any court having jurisdiction to try offenses against the United States, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

Probation may be granted whether the offense is punishable by fine or imprisonment or both. If an offense is punishable by both fine and imprisonment, the court may impose a fine and place the defendant on probation as to imprisonment. Probation may be limited to one or more counts or indictments, but, in the absence of express limitation, shall extend to the entire sentence and judgment.

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with' any extension thereof, shall not exceed five years.

*   *   *   *   *   *

The amendments to § 3651 in 1970 and 1972 have no relevance to the issues here discussed.

3. 18 U.S.C. § 3653 provides in relevant part:

*   *   *   *   *   *

As speedily as possible after arrest [of a probationer] the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

4. 18 U.S.C. § 4208 provides in relevant part:

§ 4208. Fixing eligibility for parole at the time of sentencing

(a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.

(b) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be

We are obliged to decide among other issues: whether the petitioner's sentence

was properly imposed on July 28, 1965, and therefore, whether he was validly on probation at a time when an order for his arrest charging probation violation was issued on October 9, 1970. We must also determine whether the district court erred in sentencing the petitioner under the provisions of 18 U.S.C. § 4208(b) & (c) after it had revoked his probation in March of 1967; and, finally, we must determine whether the district court, once having revoked probation, could thereafter reimpose a probationary term. As originally presented, it appeared that we would only be required to determine two issues: the first involved the maximum sentence that could be imposed for a violation of 18 U.S.C. § 641[5] where the indictment alleged no value and a plea to the indictment was taken without proof of value; the second involved imposition of sentences of probation on two separate indictments totalling in excess of five years. After argument before a panel of this court, on our own motion, we ordered rehearing en banc to consider these issues and others discussed below.

helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation as authorized by section 3651 of this title, or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run *from date of original commitment under this section.*

(c) Upon commitment of a prisoner sentenced to imprisonment under the provisions of subsection (a), the Director, under such regulations as the Attorney General may prescribe, shall cause a complete study to be made of the prisoner and shall furnish to the board of parole a summary report together with any recommendations which in his opinion would be helpful in determining the suitability of the prisoner for parole. This report may include but shall not be limited to data regarding the prisoner's previous delinquency or criminal experience, pertinent circumstances of his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent. . .

For the reasons set forth herein, we hold, *inter alia,* that Lancer was still within the valid four year, ten month, probationary term imposed under Indictment 22119 when the October 9, 1970 warrant issued.[6] Therefore, petitioner is not entitled to a withdrawal of the warrant and to discharge of the detainer. This holding, in many but not all respects accords with the analysis of the district court. Nevertheless, we are obliged to remand to the district court to correct certain of the sentences imposed and to compute the remaining probationary term which Lancer must serve.

### I. Facts

On June 1, 1965, petitioner, Edward William Lancer, pleaded guilty in the District Court for the Eastern District of Pennsylvania to Indictment 22119 charging him, in one count, with having received 364 money orders stolen from post offices in Pennsylvania and New Jersey in violation of 18 U.S.C. § 641. On July 28, 1965, the petitioner pleaded guilty to Indictment 22173, a two-count indict-

It shall be the duty of the various probation officers and government bureaus and agencies to furnish the board of parole information concerning the prisoner, and, whenever not incompatible with the public interest, their views and recommendations with respect to the parole disposition of his case.

(d) * * *

5. 18 U.S.C. § 641 provides in relevant part:

§ 641. Public money, property or records

* * * * * *

Whoever receives, conceals, or retains [any money or thing of value of the United States] with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

*Shall be fined not more than $10,000 or imprisoned not more than ten years, or both;* but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

* * * * * *

6. This disposition has required a more detailed analysis of the factual record than what might have otherwise been necessary.

ment charging the forging and uttering of a bank money order in violation of 18 U.S.C. § 500 (forging a postal money order). On that same date, he also entered guilty pleas to six other indictments variously charging him with offenses under 18 U.S.C. §§ 641, 500, and 1708 (theft or receipt of stolen mail matter). The latter six indictments, along with Indictment 22173, were transferred from six different states to the Eastern District of Pennsylvania under Fed.R. Crim.P. 20.[7] After taking guilty pleas to all indictments, the district court imposed the following sentences:

Under Indictment 22119:

Ten (10) years, the first two months of which are to be served in a jail-type institution. The execution of the balance of the sentence is suspended and the defendant placed upon probation for a period of Four (4) Years and Ten (10) months, under the provisions of § 3651, Title 18, U.S.Code.

Under Indictment 22173:

[I]mposition of sentence is suspended on Count 1, and the defendant placed upon probation for a period of Five (5) years on said count, the probation period is to begin at the expiration of that imposed in Criminal No. 22119.

On Count 2, the imposition of sentence is suspended.

On each of the other six indictments, the imposition of sentence was also suspended with no probation imposed.

The record reveals that Lancer's probation under Indictment 22119 actually commenced in May 1966.[8] The November 7, 1966 petition charging Lancer with violation of probation (lying, forging fraudulent checks, absconding from supervision, etc.) led to a hearing before the district court on March 29, 1967.[9] The order of the district court, entered on March 29th revoked Lancer's probation and ordered imprisonment for a period of

". . . NINE (9) YEARS and TEN (10) MONTHS, said sentence of imprisonment being imposed under the provisions of Title 18 U.S.Code § 4208(b) for a study as described in § 4208(c); the results of such study to be furnished to the Court within three months. . . . ."

On completion of the study, Lancer was returned to court on August 3, 1967 for final sentence,[10] and was placed on probation for nine years and ten months, with the imposition of prison sentence suspended.[11] By order dated April 9,

---

7. The states involved were: Alabama, West Virginia, Georgia, Missouri, Virginia and Illinois. Fed.R.Crim.P. 20 permits transfer of indictments from other districts for purposes of taking pleas and imposing sentences in the receiving district (here, the Eastern District of Pennsylvania).

8. From what can be ascertained from the fragmented record, having served his term of imprisonment under Indictment 22119, Lancer was then taken to Ohio to face unrelated charges in that area. It was not until May 2, 1966, that he reported to the probation office to commence his probation under this Indictment.

9. The arrest warrant, which issued as a result of the probation violation, was executed in Colorado on January 31, 1967. The record reveals various custody transfers, ultimately resulting in Lancer's "delivery" to the Eastern District of Pennsylvania on March 9, 1967.

10. The procedure utilized by the district court in requiring Lancer to serve the "sentence [originally] imposed" conformed to the statutory procedure of 18 U.S.C. § 3653, even though, as we point out in a later portion of this opinion, the court was mistaken as to the length of the sentence. (See p. 726, infra).

11. The record is unclear with respect to the order, if any, entered on August 3, 1967. A motion made by the United States Attorney (filed March 27, 1968) to "Amend Sentence," recites among other things:

"* * *

4. On August 3, 1967, a sentencing was held. On that occasion, the Court placed the defendant on probation for a period of 9 years and 10 months, with a chance for the removal of probation at the end of 5 years.

In reverting to the original sentence under Criminal Number 22119, the defendant is to have been placed on probation for a period of 4 years and 10 months. The probationary period under Number 22173 should not have been affected by either the probation violation or the resentence under 22119. Therefore, this probation sentence of 5 years on the separate indictment

1968, (apparently in response to the United States Attorney's motion, *supra* n.11), the district court suspended imposition of prison sentence but, this time, placed petitioner on probation for "four (4) years and ten (10) months."

In January, 1968, Lancer was again charged with violation of probation (absconding).[12] After a court hearing on June 10, 1968, probation was continued.

The order authorizing Lancer's arrest for his last violation of probation[13] was entered on October 9, 1970. As related in note 1, *supra,* a detainer based upon that order was placed against Lancer at Leavenworth prison on April 26, 1972. The instant action has been precipitated in large part by reason of this detainer.[14]

Lancer's *pro se* motion[15] to vacate sentence referred to all eight indictments,[16] although the significant indictment for purposes of this appeal is Indictment 22119. The district court in denying Lancer's motion held[17] that: (a) the in-

dictment was valid; (b) the ten year maximum sentence, permitted under 18 U.S.C. § 641 where value exceeds $100, could properly be imposed after a plea of guilty, because the district court could judicially notice that the value of 364 blank, stolen money orders exceeded the $100 penalty "hurdle"; (c) 18 U.S.C. § 3651 does not preclude consecutive five year probationary terms on separate indictments; and, (d) after revocation of probation, a study may be ordered and probation again imposed. This appeal followed.

## II.  *Petitioner's Theory*

Essentially, Lancer's theory, by which he seeks discharge of all restraints (in the form of sentences to be served and detainers), particularly, the October 1970 detainer, proceeds as follows:

1. His original sentence of ten years under Indictment 22119 was illegal and excessive, in that the maximum sentence which could have been imposed under 18 U.S.C. § 641 (in the absence of an allegation of value in excess of $100) was one year;[18]

would still commence at the conclusion of the 4 years and 10 months under Criminal Number 22119.
It is requested then that the order of the Court be so amended."

**12.** Lancer was arrested on May 9, 1968 in Memphis, Tennessee and was returned to Philadelphia on May 20, 1968.

**13.** The petition charging probation violation recites, among other things, that Lancer was released from an Iowa prison on February 4, 1969, after having served a one-year term for an unrelated offense. Probationary supervision under this Indictment was resumed on that date and continued until February 20, 1970 when he again absconded from supervision.

**14.** Much of Lancer's prison history can be found in his motion papers. He recites that he was sentenced on February 14, 1972 (after a plea of guilty) by the district court (Northern District of Florida) to a prison term of five (5) years for violation of 18 U.S.C. § 2312 (transportation of stolen vehicles). He was thereafter incarcerated in Leavenworth, where the warrant of October 1970 lead to the filing of the April 1972 detainer. Thereafter, he

was transferred to the penitentiary at Atlanta, Georgia, where he is presently in residence. The record indicates that as of April 26, 1972, Lancer's earliest release date was noted as June 12, 1975.

**15.** Counsel was appointed after leave to proceed in *in forma pauperis* was granted.

**16.** Indictments numbered: 22119, 22172, 22173, 22153, 22163, 22164, 22160, 22228.

**17.** The district court's opinion is found at 361 F.Supp. 129 (E.D.Pa.1973).

**18.** Lancer's motion before the district court does not refer to the permissible length of probation where the maximum prison term that can be imposed is limited to one year. His brief on appeal, however, acknowledges that the district court was authorized to impose a five year probationary term despite being limited to the statutory maximum of one year imprisonment. (*See* p. 733, *infra*). *See* Driver v. United States, 232 F.2d 418, 421–422 (4th Cir. 1956); Mitchem v. United States, 193 F.2d 55, 57 (5th Cir. 1951); Hollandsworth v. United States, 34 F.2d 423, 426–427 (4th Cir. 1929) (probationary term not limited to the statutory maximum sentence).

2. His original probationary term of four years and ten months under Indictment 22119 has expired;

3. It is illegal to impose consecutive terms of probation in excess of five years;[19] and

4. The probationary term imposed by the district court as a result of the March 29, 1967 hearing was unauthorized by 18 U.S.C. § 4208.

Hence, Lancer claims that he was not legally on probation when the order of October 9, 1970 issued, charging a violation of probation, and all subsequent acts which depend upon that order must necessarily be void.

### III. *The 1965 Sentence* (18 U.S.C. § 641)

Our analysis starts with an examination of Indictment 22119 charging petitioner with a violation of 18 U.S.C. § 641. Section 641 provides for two levels of penalties depending on the value of the property converted. If the value of the stolen property is $100 or more, an offender, "shall be fined not more than $10,000 or imprisoned not more than ten years, or both." However, if the value of the property is less than $100, an offender cannot be fined "more than $1,000[20] or imprisoned more than one year, or both." Indictment 22119[21] alleges no value for the 364 converted money orders and no proof of value was offered at the time petitioner entered his guilty pleas.[22]

In United States v. Ciongoli, 358 F.2d 439 (3d Cir. 1966), we were called upon to consider a motion to dismiss an indictment brought under 18 U.S.C. § 641. The indictment in that case alleged a value in excess of $100 attributable to 51 stolen money orders. The argument was made that, inasmuch as the money orders were blank, their value had to be less than $100. Despite the government's offer to prove value in excess of $100, the district court dismissed the indictment. We reversed, stating (at 358 F.2d 441):

" . . . The essential wrong which the statute proscribes is the misappropriation of government property, knowing that it has been stolen. Thus, no particular value of the stolen property need be alleged or proved to sustain a conviction, though in such a case *only the lesser punishment can be imposed . . . .*" United States v. Marpes, 198 F.2d 186 (3d Cir. 1952) (emphasis added).

In United States v. Marpes, *supra*, the defendant had been charged under two indictments alleging violations of 18 U.S.C. § 659.[23] One indictment specified a value in excess of $100. The other, as in the instant case, was silent as to value. As to the latter *Marpes* indictment, the court stated:

" . . . The sentence of one year's imprisonment imposed under Indictment No. 13295 was necessarily based upon a value of $100 or less, since the indictment did not allege value . . . ." 198 F.2d 189.

---

**19.** On July 28, 1965, the district court imposed four years ten months probation under Indictment 22119, and five years probation under Count 1 of Indictment 22173, for a total of nine years and ten months probation. (*See* I, *supra*).

**20.** No fine was imposed upon Lancer; hence, statutory references to fines are not relevant to our discussion and disposition of the present case.

**21.** *See* I, p. 722, *supra.*

**22.** The government's failure to offer proof of value at the time the guilty pleas were taken

makes it unnecessary for us to decide whether the failure to state a value in the indictment can be cured by proof of value at trial or at the time a guilty plea is entered. *Cf.* United States v. Ciongoli, 358 F.2d 439, 441–442 (3d Cir. 1966).

**23.** The penalty provisions of 18 U.S.C. § 659 (theft from interstate carriers) parallels the penalty provisions of § 641, in that it also provides two levels of penalties depending upon the value of the property taken.

The cases,[24] cited by the government in an effort to sustain the sentence imposed upon Lancer, are inapposite, as in each of them, the indictments allege a value in excess of $100, an ingredient missing in the Lancer Indictment.

■ We agree with Lancer that, under Indictment 22119, his sentence could not exceed a prison term of more than one year. We hold, therefore, that it was error for the district court to impose a ten year sentence even though nine years and ten months of that sentence were suspended. The district court did not err, however, in following its ten year sentence with a probationary term of four years and ten months. As previously noted (note 18 *supra*), the probationary term need not be limited to the maximum prison sentence (in this case one year) prescribed by statute.

■ Lancer's entire sentence of July 28, 1965, is not voided by our holding that the district court imposed an excessive prison term. The district court could validly have imposed a one year term and that period remains as Lancer's sentence under Indictment 22119. United States v. Pridgeon, 153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631 (1894). We leave to the district court, on remand, the task of correcting Lancer's sentence in accordance with our holding.[25]

IV. *The 1967 Revocation of Probation* (18 U.S.C. §§ 3653, 3651, 4208)

(A). *§ 3653*

18 U.S.C. § 3653 (*see* note 3 *supra*) specifies the action which may be taken by the district court after the probationer has been arrested for violation of probation. Under the terms of the statute, the district court could revoke Lancer's probation (as it did) and require him either to serve the sentence imposed or any lesser sentence.[26]

■ In the present case, the July 28, 1965 sentence is the "sentence imposed" within the meaning of § 3653. We have already determined that the July 28, 1965 sentence was excessive when entered (*see* III *supra*), but not void. Hence, when Lancer's probation was revoked under § 3653, the maximum time which he could have been required to serve was limited to the time remaining under a one year (and not a ten year) sentence. Lancer had served two months in jail and, as we construe the record, had apparently been credited with four months of pre-sentence custody by the district court. Accordingly, as of March 29, 1967, Lancer had served six months in jail and could have been required to serve no more than another six months. The district court apparently acted under the first alternative of § 3653 in requiring Lancer to "serve the sentence imposed".[27] Translating what the district court intended to do in its order of March 29, 1967, into what it could validly do, the district court in effect committed Lancer for the unserved portion of a valid one year sentence (i.e., six months). It chose to do so under the terms of § 4208(b) and (c) (*see* discussion following) seeking such guidance as a study could furnish, prior to imposing final sentence.

---

24. *See* Churder v. United States, 387 F.2d 825 (8th Cir. 1968); Jalbert v. United States, 375 F.2d 125 (5th Cir. 1967).

25. In Ruiz v. United States, 365 F.2d 500 (3d Cir. 1966), we indicated that when a sentence is imposed at variance with the statutory requirements, " . . . The correction is to be made not by discharge of the prisoner but by an appropriate amendment of the invalid sentence by the court which imposed it. . . ."

26. § 3653 provides a third alternative if imposition of sentence was originally suspended.

Then the district court, upon revocation of probation, could fix any sentence which could have been imposed at the initial sentencing. This third alternative was not available to the district court in the present case, since the court did not suspend sentence on Indictment 22119.

27. Although the term it required Lancer to serve was excessive, the district court nevertheless complied with the terms of the statute by requiring Lancer to serve the nine year, ten month sentence originally imposed. (We cannot tell whether or not the four months

Although the district court may have erred in its determination as to the term to which Lancer could be sentenced in both its July 1965 order and in its March 1967 order, nevertheless, it committed no error in the manner in which it applied the provisions of § 3653. The district court did in fact require service of the unserved portion of the original sentence which, we hold today, is limited to one year. This is precisely what § 3653, by its terms, authorizes.[28]

### (B). § 4208

While Lancer does not challenge the manner in which the district court applied § 3653 in its order of March 29, 1967, he does assert that the district court could not impose probation under 18 U.S.C. § 4208 once his probation was revoked. To answer this argument, two preliminary questions must be considered.

(1) Are the study provisions of § 4208(b) and (c) available where the sentence of the probationer does not exceed one year?

(2) Are these provisions available for use in conjunction with the revocation of probation under § 3653?

In answering these questions, we initially look to the relevant legislative history. 18 U.S.C. § 4208 was enacted in 1958 to provide additional information, services, and sentencing procedures to enable the sentencing judge to impose equitable and flexible[29] sentences in keeping with the needs of the offender and public safety. It was designed to afford greater discretion to the district court judge, as well as to give the court (in § 4208(b) and (c)) discretionary access

to the evaluative services of the Bureau of Prisons before being required to impose a final sentence.[30]

§ 4208(a) provides the judge with alternative procedures in sentencing convicted offenders to imprisonment. Under this provision, one option open to the court is to fix the maximum term and leave parole eligibility at one-third of this maximum period. Alternatively, the parole eligibility date can be left to the Board of Parole, or it can be specified at less than one-third the maximum sentence imposed.

Still another technique (designed for flexibility in sentencing) was incorporated into the statute in the form of the study provisions found in § 4208(b) and (c). The House Committee Report described these sections in this fashion:

"Sub-Section (b) . . . would make it possible for the court, when confronted with the necessity of making a sentence determination in a particularly difficult case, to commit the defendant (technically under the statutory maximum term) to the Attorney General for a complete study over a period of three to six months. At the completion of this period the court would be authorized to modify the sentence if the study's findings and the judgment of the court indicate such action . . . . This provision would extend the court's authority to modify a sentence to a period up to six months, thereby making feasible detailed studies of selected defendants before a final sentence must be formulated.

After receiving from the Director of the Bureau of Prisons a summary of this study, the court in fixing the final penalty may affirm the original sen-

pre-sentence credit was overlooked by the district court).

28. No issue is raised and we need not consider whether the three months served by Lancer under § 4208(b) constitute a "lesser sentence" under § 3653.

29. Testimony of the various witnesses at the Committee Hearings stressed in almost every instance the desirability of additional flexibili-

ty with respect to sentencing. *See* Hearings on H.J.Res. 424, 425 & H.R. 8923 before a Subcomm. of the House Comm. on the Judiciary, 85th Cong., 2nd Sess. ser. 14, at 22 (Testimony of Hon. John Biggs) at 34 (Testimony of Hon. Bolitha J. Laws) (1958).

30. *See* 1958 U.S.Code Cong. & Admin.News, 85th Cong., 2d Sess. pp. 3891–3906, 104 Cong.Rec. 13,392 (1958) (remarks of Congressman Celler).

tence or impose a modified sentence under any applicable provision of law . . . . Inasmuch as the origina[l] [sic] sentence of the court represents the maximum authorized by statute, any later modification by the court would constitute a reduction in sentence . . . . A number of judges have advised the Committee that this extension [up to six months] would be most helpful in enabling them to give more deliberate consideration to exceptional cases.

Sub-Section (c) . . . prescribes that the Director of the Bureau of Prisons make the prisoner studies needed for parole eligibility and release determinations by the Board of Parole . . . ."[31]

In its order of March 29, 1967, the district court acted under § 4208(b) and (c) rather than under § 4208(a). When the statutory language of Sub-section (b) is contrasted with that of Sub-section (a) (*see* note 4 *supra*) it is significant that two limitations found in Sub-section (a) are missing from Sub-section (b). Sub-section (a) is prefaced by the words "Upon entering a judgment of conviction . . . ." No such language appears in Sub-section (b).

Similarly, Sub-section (a) purports to be limited to cases in which " . . . the defendant [is] sentenced to imprisonment for a term exceeding one year . . . ." Again, such language is conspicuously absent from Sub-section (b). These differences in statutory language, as well as the legislative history of § 4208, are relevant to our determination that the district court did not err in utilizing § 4208 in its March 29, 1967 order.

*One Year Term*

█ The fact that Sub-section (b) is silent with respect to the length of sentence required before a study can be ordered is consistent with our view that the purpose for the study provisions bears little relationship to the term for which the defendant can be sentenced. The purpose of Sub-section (b) was to assist the court in "making a sentence determination in a particularly difficult case."[32] There is no basis for assuming that difficult sentencing decisions occur only when the permissible sentence exceeds one year. Complicated factors, which a study by the Bureau of Prisons is designed to sort out, are just as likely to be present when the offense committed carries a maximum sentence of less than one year. Here, Lancer had pleaded guilty to eight separate indictments and had suffered incarceration on other, unrelated charges during the time his probation under Indictment 22119 should have been running. Whatever factors influenced the district court in its initial sentence of Lancer on July 28, 1965 might or might not have been operative by March 29, 1967. The learned district judge, in an effort to determine the appropriate sentence in light of the intervening incarceration and the violation of probation, employed § 4208 for the precise purposes for which it was enacted. We find no logic in a construction of the statute which would prohibit the district court from utilizing the study provisions of § 4208(b) and (c) where the term of the offender is less than one year. We therefore hold that the "one year" limitation of § 4208(a) was not intended by Congress to bar use of § 4208(b) and (c) after probation has been revoked on an offense carrying a maximum penalty not exceeding one year imprisonment.

*Interrelationship of §§ 3653 and 4208*

█ It is argued that, after probation has been revoked, the district court is without authority to sentence pursuant to § 4208. This argument focusing on the first words of § 4208(a) ("Upon entering a judgment of conviction. . ."), characterizes this clause as a "time" limitation which restricts the use of § 4208

31. H.R.Rep. No. 1946, 85th Cong., 2d Sess. 9–10 (1958).

32. H.R.Rep. No. 1946, 85th Cong., 2d Sess. 9 (1958).

to the time of initial sentencing. We do not agree.

In the first instance, 18 U.S.C. § 4208(b), the section with which we are here concerned, makes no reference to and is not prefaced by, the arguably limiting language of Sub-section (a). The words "Upon entering a judgment of conviction . . ." are not to be found in either § 4208(b) or (c).

Additionally, if we were to adopt the "time" characterization urged upon us, it would necessarily bring § 4208 into conflict with § 3653—a result which we do not believe was ever intended. This inconsistency can best be shown by an illustration. An offender, placed on probation in 1972 with imposition of sentence suspended, violates probation in 1974. If § 4208 is not available for resentencing purposes in 1974, because 1974 is not the "time" when the (1972) "Judgment of Conviction" was entered, the "third alternative" of § 3653 (see note 26 supra) would be meaningless. Under § 3653, the court after revoking probation may (if imposition of sentence was suspended) " . . . impose any

sentence which might originally have been imposed." If sentence could have originally been imposed under § 4208, as it unquestionably could, then § 4208 is available for use upon revocation of probation under § 3653's third alternative, and the "time" limitation argument urged against its use, must fall. If available under one alternative under § 3653, we see no logic in concluding that § 4208 is not equally available under the other resentencing provisions of § 3653.

Substantiating our conclusion that the prefatory language of § 4208(a) ("Upon entering a judgment of conviction . . .") imposes no time restriction or other limitation on the use of § 4208(b) and (c), is Fed.R.Crim.P. 35 which permits a reduction in sentence within 120 days after sentence is imposed. If we were to adopt the construction urged upon us that § 4208 can be utilized only "Upon entering a judgment of conviction . . ." then there could be no modification of a sentence, (originally imposed under another statute (e.g. § 3651) ), to a sentence pursuant to § 4208.[33] We know of no such restriction required either by

---

33. As a matter of interest, we note that Rule 35 has been construed by the Bureau of Prisons to permit sentences imposed under one statute to be amended and made pursuant to § 4208 even after 120 days has expired, on the theory that the change of sentence to § 4208(a)(2) affects only the parole eligibility date and not the sentence itself. Letter from Eugene N. Barkin, Esq., Legal Counsel, Bureau of Prisons to Judge Hunter, United States District Court, Kansas City, Missouri, March 17, 1967. Mr. Barkin set forth the Bureau's position as follows:

* * * * * *

Russ Millin had indicated to me that you were concerned with amending a judgment to include the provisions of 18 U.S.C. 4208(a)(2). Some people feel that this would be a reduction in sentence and therefore could not be accomplished after the period allowable for reduction under Rule 35 of F.R.Cr.P. has elapsed. We have taken the position that since this amendment does not change the term of sentence, it is not a reduction. At best, it only opens the door to a possibility of an earlier parole eligibility date. Perhaps a more difficult obstacle to overcome is the language of the

statute itself which states that this provision may be used "Upon entering a judgment of conviction . . .". At any rate, a number of courts have amended their judgment in this manner subsequent to the period allowable under Rule 35 and this Bureau has always accepted this amendment at face value.

* * * * * *

As recently as May 3, 1972, the Bureau of Prisons has reaffirmed its position with respect to post-120 day modifications under § 4208. Letter from Julia S. Willson, Attorney in the Office of the Director of the Bureau of Prisons to Allan A. Casperson (at Lewisburg, Pa.) May 3, 1972.

We do not have before us for decision, the question of whether modification to a § 4208 sentence may be permitted after 120 days. We note the Bureau of Prison's practice and Mr. Barkin's letter, only to reinforce our view that § 4208's use is not rigidly limited to the time of initial sentencing; even where Sub-section (a) is involved. Here, as we have noted, we are concerned with Sub-section (b), which does not include the term "Upon entering a judgment of conviction . . .".

the express terms of the statutes in question or by reason and, hence, we are of the view that § 4208 was properly utilized by the district court in its March 29, 1967 order. (*See* n. 37 *infra*).

## Reimposition of Probation

■ Our answers to the two preliminary questions result in our approving the use of § 4208(b) and (c) in the March 29, 1967 order. The ultimate question then remains whether § 4208 authorizes the reimposition of probation after probation has once been revoked. There is little precedent to guide us in this area. We do have, however, the views expressed by Mr. Barkin, Légal Counsel to the Bureau of Prisons who has written:

\* \* \* \* \* \*

"It seems to me that the language of the statute makes it quite clear that once having revoked probation, the court must then impose a sentence. It may not revoke and thereupon reinstate the defendant to probation. The logic of this provision seems apparent. Since a court does not have to revoke even if the defendant violates the conditions of probation, but rather revoke only when it concludes the defendant should no longer remain at liberty in the community, it would be most incongruous if it immediately reinstated the defendant without anything new and material before it.

\* \* \* \* \* \*

Whether a probation violator, who has been committed under the provisions of § 4208(b), can thereafter be reinstated to probation in view of the provisions of § 3653, as far as I know, has never been decided by a competent court. Again, 'shooting from the hip,' I take the view that probation is available to the Court under these circumstances. The rationale behind the preclusion of reinstatement after revocation as set forth in § 3653, is not applicable to this situation because here the court has new, and possibly significant information before it when the case comes before it for final disposition. It would seem most incongruous if the court would be unable to reinstate a defendant to probation if the new facts available to it clearly indicate this to be the proper course to take. In addition, in applying § 4208(b) in the first place the court clearly indicated that it was uncertain and wanted more information before making its final determination." [34]

\* \* \* \* \* \*

Mr. Barkin's analysis accords with the one case we have found in which a sentencing judge revoked probation and then utilized § 4208 for the purpose of obtaining information to aid the court in determining the sentence to be imposed. Smith v. United States, 297 F.Supp. 131 (N.D.Mo.1968). We recognize that in the instant case probation followed the use of § 4208(b) and (c) while in *Smith* imprisonment followed the revocation of probation. Nevertheless, the procedure employed by the district court in *Smith* in order to obtain information helpful to sentencing is the very procedure utilized by the district court here. We cannot distinguish the actions taken by the *Smith* court from those taken by the district court judge in the instant case. Both courts were seeking information for assistance in sentencing; both courts looked to § 4208(b) and (c) for that assistance; and both courts utilized information furnished in formulating the final action which they took. We do not believe that the fact that the *Smith* court imposed imprisonment after completion of the § 4208 study while the district court here imposed probation should affect the availability of § 4208.

In *Smith* a term of five years was imposed. The district court in this case, after utilizing the information received, determined that a term of "no years" should be imposed. We find little logic in an interpretation which would require us to hold that § 4208 might be available

**34.** Barkin, Sentencing the Adult Offender, Fed. Probation Q. June 1962, at 13–14.

after revocation of probation if as little as one day's imprisonment results but not if "no imprisonment" results.

An argument has been made that an examination of § 3651 (which provides for the imposition of probation) and § 3653 (which provides for revocation of probation) reveals a distinction between the terms "probation" and "sentence".[35] This distinction, it is argued, prevents the district court, once it revokes probation, from reimposing probation because the only discretion left in the district court at that point is to determine whether the probation violator should serve the original sentence imposed or a lesser sentence. If, as it is argued, "probation" is not a "*sentence*" within the meaning of § 3653, then the district court cannot reimpose "probation" because § 3653 requires service of the "sentence imposed" (*i.e.*, a prison term).

We recognize that in various statutory contexts a distinction is drawn between "probation" and "sentence", despite the punitive features of probation.[36] Whether or not that distinction would prevent a district court from reimposing probation *immediately* after it had revoked probation we need not decide in the factual context of this case. Here, the distinguished district judge after revoking

probation committed Lancer to the custody of the Attorney General to serve the "*sentence*" originally imposed (nine years, ten months) (*see* p. 723 *supra*). The district court's use of § 4208(b) and (c) resulted in Lancer's imprisonment for at least three months during the course of the study. It was only after the initial § 4208(b) custody period had ended, and the study furnished to the district court, that probation was again ordered. Imposition of probation at the completion of the study is one alternative specifically contemplated by § 4208(b), which provides that:

" . . . After receiving such reports and recommendations, the court may in its discretion: (1) *Place the prisoner on probation as authorized by section 3651 of this title*,[37] or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from date of original commitment under this section." (emphasis supplied).

\* \* \* \* \* \*

Thus while we recognize that under existing law, probation may not be regarded as a "sentence" for all purposes [38]

---

**35.** The argument rests on a comparison of the language of § 3651 (" . . . may suspend the imposition or execution of *sentence* and place the defendant on *probation* . . .") with that of § 3653 (" . . . may revoke the *probation* and require him to serve the *sentence* imposed . . ."). (emphasis supplied).

**36.** *See* Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1942) (" . . . a probation order is 'an authorized mode of mild and ambulatory punishment . . . .' ")

**37.** As in § 4208(a), § 3651 commences with the prefatory language " . . . Upon entering a judgment of conviction . . ." (*see* note 2 *supra*). As we noted in our discussion of § 4208(b) (*see* p. 728 *supra*) if this language is to be construed as a mandatory "time" limitation, it would prevent the imposition of probation after a § 4208(b) study. It

would also prevent a modification or reduction of sentence to provide for probation in a proceeding brought under Fed.R.Crim.P. 35. In both § 4208(b) and Rule 35, imposition of probation under § 3651 is authorized at a period of time *after* the judgment of conviction. We decline to interpret the interrelationship of these sentencing statutes in a manner which would restrict their use and which would necessarily lead to inconsistent and, we believe, unintended results. One section of a statute should not be read so as to " . . . bring it into unreconcilable conflict with other provisions of the Act." *See* Roberts v. United States, 320 U.S. 264, 267, 64 S.Ct. 113, 115, 88 L.Ed. 41 (1943). Moreover, such a construction would frustrate the Congressional purpose of "flexibility" in sentencing which pervaded the debates leading to the enactment of § 4208. *See* p. 727 and note 29 *supra*.

**38.** We note that both the American Bar Association Standards and the proposed new Fed-

we need only decide here that the proper use of § 4208 in conjunction with §§ 3653 and 3651, permits the reimposition of probation after its revocation. Further we perceive no practical difference between revocation of probation, followed by reimposition of probation, and continuation of probation in the first instance. It is not contended, for example, that the district court was without power to continue Lancer on probation, as it did in its order of June 10, 1968. Had the March 29th order been framed as a "continuation of probation" rather than a "revocation of probation" there could be little argument as to its validity. We do not think that a mechanistic argument seeking to distinguish between the two orders on the basis of the semantic differences between them justifies reaching a different result in the case of each order.[39] To argue that a district judge is authorized to continue an accused probation violator on probation but is without power to revoke pro-

bation (so that the violation can be fully entered in the probationer's record) and then reimpose probation is to exalt form over substance.

■ We hold, therefore, that the provisions of § 4208(b) and (c) may be utilized in conjunction with revocation of probation proceedings under § 3653. If so employed, the district court after it has received the § 4208(c) study, may again impose probation, even though it had previously revoked probation. Accordingly, the district court here did not err in employing § 4208(b) and (c) in its March 29, 1967 order, and exercising its discretion in reimposing probation at the conclusion of the study. It did err, however, in imposing a greater probationary term than is permissible. The permissible term of probation that could have been imposed at that time was restricted to a maximum of five years less the number of months theretofore served on probation by Lancer under Indictment 22119.[40]

eral Criminal Code treat probation as a sentence for all purposes. ABA Standards Relating to the Administration of Criminal Justice, Compilation, p. 393 (1974) provides in § 1.1 (Nature of sentence to probation):

\* \* \* \* \* \*

"(b) In this report the term 'probation' means a sentence not involving confinement which imposes conditions and retains authority in the sentencing court to modify the conditions of the sentence or to resentence the offender if he violates the conditions. Such a sentence should not involve or require suspension of the imposition or the execution of any other sentence."

\* \* \* \* \* \*

The Final Report of the National Commission on Reform of Federal Criminal Laws, cited in Hearings Before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary, 92nd Cong., 1st Sess. 430 (1971) provides in § 3101:

"(1) . . . A person who has been convicted of a federal offense may be sentenced to probation or unconditional discharge as provided in this Chapter."

\* \* \* \* \* \*

The comment following § 3101, while recognizing that "probation" is not regarded under present law as a "sentence", states:

" . . . Subsection (1) determines that probation is a sentence, an affirmative correctional device . . . .."

**39.** "Sentencing should not be a game in which a wrong move by the judge means immunity for the prisoner." King v. United States, 69 App.D.C. 10, 98 F.2d 291 (1938).

**40.** As recited earlier, (see I *supra*) the final corrected order placing Lancer on probation (after his study was completed) was not entered until April 9, 1968. This completed the final sentencing of August 3, 1967. We note that although the district court in its April 9, 1968 order "placed [Lancer] on probation for a period of four (4) years and ten (10) months", the provisions of § 3651 would preclude probation under Indictment 22119 in excess of a total of five years. (*See* our discussion *supra* under V). We leave to the district court for its determination on remand the remaining time which Lancer could have been required to serve on probation when the April 9, 1968 order was entered. As will appear in a later part of this opinion involving our computation of the time spent by Lancer on probation (calculated from *July 28, 1965*), neither our conclusion nor disposition would be affected by any correction of the April order.

## V.  *Service of Probation Term*

Lancer also challenges the consecutive terms of probation imposed on July 28, 1965.  He claims first, that his original four year, ten months probationary term under Indictment 22119 had expired by October 9, 1970 (the date the order was entered authorizing the warrant for his last violation of probation).  Second, he claims that § 3651 authorizes no more than five years probation and that, therefore, the second five year probationary term imposed under Indictment 22173 was void and incapable of supporting the warrant ordered on October 9, 1970, and resulting detainer.  We find no merit in either argument.

### (A).  *Probation Served Under Indictment 22119*

Lancer's contention that his probation time under Indictment 22119 had been fully served by October 9, 1970 results from a mechanical computation of the gross time interval between the date of sentence (July 28, 1965) and the date of the order authorizing a warrant for his arrest (October 9, 1970).  This gross interval (using 30-day months) totals five (5) years, two (2) months and eleven (11) days.  It fails, however, to take into account time spent in custody, which we have calculated at approximately six (6) months and five (5) days.[41]

■ Subtracting only "jail-time" served (six (6) months and five (5) days) from the gross time interval of five (5) years, two (2) months and eleven (11) days reveals that Lancer could not have served more than four (4) years, eight (8) months and seven (7) days on probation under this Indictment.[42]  Inasmuch as Lancer was required to serve four (4) years, ten (10) months on probation under Indictment 22119, it is evident that he has not completed his initial probationary term.

The above calculation has deliberately excluded: other periods of incarceration spent under unrelated charges (*see* I *supra*), time when Lancer was in violation of probation, or time spent during custody transfers following such violations.  We have made this initial calculation by taking into consideration only the most evident deductions from the time Lancer claims to have spent on probation; that is, jail time served under this very Indictment.  When other required deductions are made by the district court on remand, it will become apparent that Lancer still has a substantial period of time to serve on probation under Indictment 22119.  Even calculating on the basis of the incomplete record before us, it is apparent that Lancer falls far short of having completed his probationary term under this Indictment.

Lancer was sentenced on July 28, 1965.  He served two (2) months in jail; was released on September 28, 1965; and was then taken to Ohio to face unrelated charges.  On May 2, 1966 he began his four (4) year, ten (10) months probationary term in this district.  A petition dated November 7, 1966 reveals that at least by that date Lancer was in violation of probation.  (Up to this time, Lancer had spent six (6) months and five (5) days on probation).  From November

---

41.  Petitioner served two (2) months in jail, as provided in his sentence under Indictment 22119 (from July 28, 1965 to September 28, 1965).  He was again in custody for a study from March 29, 1967 to August 3, 1967 (four (4) months and five (5) days).  Therefore, the total jail time served *after* July 28, 1965 under Indictment 22119, was six (6) months and five (5) days.  This calculation does not include the four (4) months pre-sentence custody which the district court apparently credited to Lancer.

42.  Time spent in jail has not been counted as time spent on probation.  In the absence of express direction by the sentencing court concerning the time when probation is to commence (and its relation to intervening jail time, parole, etc.), probation would be tolled during such periods and would resume upon release from confinement.  United States v. Gelb, D.C., 175 F.Supp. 267, aff'd, 269 F.2d 675 (2d Cir.), cert. denied, 361 U.S. 822, 80 S.Ct. 66, 4 L.Ed.2d 66 (1959) (intervening federal confinement); United States v. Gerson, 302 F.2d 430 (6th Cir. 1962) (intervening state confinement).

7, 1966 until March 29, 1967, petitioner was in custody for probation violation. On March 29, 1967 the court revoked probation and committed Lancer for the § 4208(b) study. He was not returned to court for final sentencing until August 3, 1967. Hence, from November 7, 1966 to August 3, 1967 Lancer cannot be credited with having served probationary time.

On August 3, 1967 Lancer was to have resumed probationary status. The probation report, however, reveals that unrelated detainers had been placed against him which required the Philadelphia police to take him into custody. After having posted bail with respect to these detainers, he again absconded, and on January 10, 1968 was accordingly charged with probation violation. From that date until June 10, 1968, Lancer was in probation violation (or custody travel as a result of probation violation). Hence, we cannot credit any additional probationary time served from August 3, 1967 to June 10, 1968. The probation record [43] reveals that after Lancer was continued on probation on June 10, 1968 he was returned to Iowa to serve a one year sentence, and was not released from confinement there until February 4, 1969.

From February 4, 1969 until February 20, 1970 (one (1) year and sixteen (16) days) he was again under probationary supervision under Indictment 22119 in this district. Adding this one (1) year, sixteen (16) days to his prior allowable probationary service (May 2, 1966 to November 7, 1966) of six (6) months, five (5) days, reveals that Lancer has served no more than one (1) year, six (6) months and twenty-one (21) days of his prescribed four (4) year, ten (10) months term.[44]

(B). *Probationary Terms Exceeding Five Years*

■ Having determined from our review of the record that Lancer has yet to complete service of his probationary term under Indictment 22119, we nonetheless are obliged to consider his contention that the probationary term of five (5) years imposed under Indictment 22173 is void.[45] In support of this argument, Lancer cites Fox v. United States, 354 F.2d 752 (10th Cir. 1965) and United States v. Pisano, 266 F.Supp. 913 (E.D. Pa.1967). We believe his reliance on these authorities is misplaced.

*Fox* involved a single information containing two counts. Imposition of sentence was suspended, and Fox was placed on probation for five years on each count, the periods to run consecutively. Subsequent probation violations brought into question the validity of the *consecutive* probationary terms exceeding five years. On appeal, the court voided the excessive portion of the probationary term, holding that no more than five years total probation could be imposed under one indictment with multiple counts. Both five year probationary terms were deemed to run concurrently rather than consecutively. *Pisano*, on similar facts, reached the same result when the Government conceded that *Fox* controlled. Hence, both

**43.** *See* Petition for Probation Violation dated September 28, 1970. This Petition resulted in the court's order of October 9, 1970.

**44.** The calculations noted above do not include all of the information contained in the various reports filed by the probation authorities. These facts may very well reduce even further the time Lancer has served on probation. We have not gone into any greater detail here, as we regard the accurate computation of "time spent and remaining" to be the function of the district court on an appropriate record. We wish to make clear that the district court is not bound by our calcula-

tions if the facts developed on remand are other than appear here.

**45.** This claim arises by virtue of that portion of § 3651 which provides:

"The period of probation, together with any extension thereof, shall not exceed five years."

Under our analysis, Lancer has not as yet commenced serving his probationary term of five (5) years under Indictment 22173. Despite this he may properly contest the validity of that "sentence" in this proceeding. *See* Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).

*Fox* and *Pisano* are concerned with multiple counts in *one indictment*, as distinct from *multiple indictments.*

We need not decide whether we would follow *Fox* in a multiple count context (necessarily restricted by Fed.R.Crim.P. 8(a)).[46] Here, we are confronted with *one* indictment containing *one* count under 18 U.S.C. § 641, originating from the Eastern District of Pennsylvania (# 22119), and *one* indictment containing *two* counts under 18 U.S.C. § 500, originating from the Northern District of Alabama (# 22173). The dates on which the offenses were alleged to have occurred are different. The offenses are different and the jurisdictions in which they were committed are widely separated. The specified money orders involved are separated in number by over thirteen million (# 22173: Money Order # 4565525367; # 22119: Money Order # 4552156826).

The only arguable identity between these two indictments is suggested by the statement of petitioner's trial counsel (before the district court) that these two indictments, and the other six indictments, stem from and are part of one integral and continuous transaction. There is no evidence in the record to support such a statement or finding. What evidence there is leads to the opposite conclusion.

Fed.R.Crim.P. 20[47] requires the same treatment of the defendant in the receiving jurisdiction as he would have received in the forwarding jurisdiction. We do not believe that 18 U.S.C. § 3651 would have precluded the Alabama District Court from imposing a five year probationary term, to follow a five year probationary term imposed on petitioner by the District Court in Pennsylvania, had there been no Rule 20 transfer and had sentencing proceeded independently in both jurisdictions. We cannot conceive why we should require a different result here merely because it was the same District Judge imposing sentence under both indictments.[48]

Our interpretation of 18 U.S.C. § 3651 (as authorizing probation in excess of five (5) years when imposed under more than one indictment) is bolstered by an analysis of the practical differences between our situation and that found in *Fox.* In the *Fox* context, *one* judge, in

46. Fed.R.Crim.P. 8(a) provides:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

\* \* \* \* \* \*

47. Fed.R.Crim.P. 20(a) provides:

(a) Indictment or Information Pending. A defendant arrested or held in a district other than that in which the indictment or information is pending against him may state in writing that he wishes to plead guilty or *nolo contendere*, to waive trial in the district in which the indictment or information is pending and to consent to disposition of the case in the district in which he was arrested or is held, subject to the approval of the United States attorney for each district. Upon receipt of the defend-

ant's statement and of the written approval of the United States attorneys, the clerk of the court in which the indictment or information is pending shall transmit the papers in the proceeding or certified copies thereof to the clerk of the court for the district in which the defendant is held and the prosecution shall continue in that district.

\* \* \* \* \* \*

48. The imposition of sentence under Count 2 of Indictment 22173 was suspended *without* probation. Similarly, the district court suspended imposition of sentence as to the remaining six indictments, and made no provision for probation. A suspension of imposition of sentence without placing the defendant on probation is a nullity. Ex Parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); Collins v. United States, 148 F.2d 338 (9th Cir. 1945). In light of the manner in which we dispose of this appeal, it is unnecessary for us to deal with the effect of these "sentences" at this time. *Cf.* Miller v. Aderhold, 288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 702 (1933).

one district sentences one offender under one indictment. The sentence, with probation, in such a case can be structured and controlled at the very outset. By contrast, when several indictments are involved,[49] they can arise in different geographical jurisdictions. If § 3651 is construed to require an overall five year probationary maximum, despite the number of indictments involved, district courts would face difficult problems in the case of repeat offenders. At the time of sentence, information might not be current or available as to the amount of probationary time which still may be imposed under such an overall five year maximum. Serious questions, many requiring litigation would be inevitable under such a construction of § 3651: which of multiple probationary sentences (and what part of each) is to be deemed excessive; how much probationary time, under which sentence, remains to be served, etc. These, and countless other difficulties become immediately evident if the five year maximum provision of § 3651 is regarded as applying to multiple indictments, in the absence of a requirement, binding on all courts, that multiple periods of probation run concurrently.[50] No such requirement exists under present law.

We do not perceive the same problems, in dealing with separate counts of one indictment, as we perceive when dealing with separate indictments. There is good reason, therefore, for us to regard as inapposite Fox, supra, Pisano, supra, and United States v. Buchanan, 340 F.Supp. 1285 (E.D.N.C.1972).

We conclude that a valid probationary term of almost ten (10) years (four (4) years, ten (10) months on Indictment 22119; five (5) years on Indictment 22173) was imposed by the district court on July 28, 1965, under the two indictments.

### VI. Conclusion

Although we agree with the district court that the ultimate relief (vacation of sentences) sought by Lancer cannot be granted, we are nevertheless obliged to vacate the district court order of August 2, 1973 and remand to that court for such additional proceedings as are consistent with this opinion.

By this disposition, we do not indicate in any respect that the district court in its discretion may not (after appropriate proceedings) enter an order similar to the one which we have vacated. At the least, the district court will be obliged to:

(1) correct the sentence imposed under Indictment 22119 (and any subsequent order entered on the basis of the erroneous sentence); as well as,

**49.** We recognize that Lancer was sentenced under eight (8) indictments by one judge. This situation came about only as a result of Fed.R.Crim.P. 20 proceedings (see n. 47 supra) and in no respect affects our analysis. Had Lancer not consented to the Rule 20 proceedings and had he not pleaded guilty, the problems we envisage here could very well have surfaced in at least seven different jurisdictions if a "five year maximum rule" applied.

**50.** We recognize that a solution to this problem has been proposed by making multiple periods of probation, whether imposed at the same time or at different times, run concurrently. The Final Report of the National Commission on Reform of Federal Criminal Laws, cited in Hearings Before the Subcomm. on Criminal Laws and Procedures of the Senate Comm. on the Judiciary, 92nd Cong. 1st

Sess. § 3104, at 434–35. The comment to this section recites:

"This Section does not have a counterpart in Title 18. The provision for the concurrent running of multiple periods of probation is based on the same premise as is the limitation of the maximum period to five years—either probation will work within a relatively short period of time or it will not work at all. In providing that probation runs concurrently with a prison or a parole term for another offense, the Section differs from existing law . . . ."

This proposal has yet to be enacted and, in our view, does not represent the existing state of the law. By our holding we express no view or opinion as to the advisability (as distinct from the legality) of imposing a term of probation in excess of five years on multiple indictments which determination is a matter for the district court's discretion.

(2) determine the remaining term, if any, of probation to be served by Lancer under Indictment 22119.

One further observation is appropriate. We have deliberately limited ourselves to a consideration of only those issues presented within the framework of Lancer's challenge to his sentences under Indictments 22119 and 22173. However, we cannot ignore that part of Lancer's petition which seeks a discharge of all restraints under Indictments 22172, 22153, 22163, 22164, 22160 and 22228. Nor can we ignore the fact that the sentences imposed under those Indictments, as well as under Count 2 of Indictment 22173, are void as a matter of law. Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *see* note 48 *supra.* The fact that we have not treated with these matters need not restrain the district court from considering their disposition along with the other matters to be dealt with on remand. Indeed, although we impose no such requirement, it would be appropriate for the district court to re-evaluate all the apparent deficiencies brought to light by Lancer's petition, with a view to structuring integrated and consistent sentences.[51] We obviously express no opinion as to what those sentences should be. With respect to the directions given here we do not preclude the taking of evidence if in the district court's discretion, it is warranted.

The order of the district court will be vacated and the cause remanded for proceedings consistent with this opinion.

Chief Judge Seitz joins in all of this opinion except Paragraph IV entitled *The 1967 Revocation of Probation.* Solely as to that issue, he concurs in Judge Forman's dissent.

JAMES HUNTER, III, Circuit Judge, with whom FORMAN and ADAMS, Circuit Judges, join, dissenting:

Although I am in substantial agreement with the majority opinion, I cannot agree with that portion of the opinion approving consecutive terms of probation which exceed the five year limit imposed in 18 U.S.C. § 3651. Accordingly, I must dissent from Section V(B) of Judge Garth's opinion.

18 U.S.C. § 3651 provides in relevant part:

> Probation may be limited to one or more counts or *indictments,* but, in the absence of express limitation, shall extend to the *entire* sentence and judgment.

> \*   \*   \*   \*   \*   \*

> *The* period of probation, together with any extension thereof, shall not exceed five years. (Emphasis added.)

Since the plural form, indictments, is used, the statute seems to contemplate situations where a district judge sentences a defendant on several indictments at the same time.

The clear import of the second paragraph is that only *one* five-year period of probation may be given. The five-year probationary term must extend to the entire sentence so that even if several indictments are consolidated, the limitation is applicable.[1] *See* Fox v. United

---

51. One factor, affecting any corrective action which the district court may decide to take, is the length of time which has elapsed since Lancer's void sentences were imposed. *See* Pollard v. United States, 352 U.S. 354 at 361–362, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). Other factors to be considered on resentencing are the various periods of custody and the events intervening between the date of original sentencing and the present.

1. I cannot accept the apparent view of the sentencing court in this case 1) that consecutive probationary periods, exceeding five years in total duration, may be imposed for each offense comprising the court's "entire sentence and judgment" and 2) that for this purpose, "offense" should be equated with "indictment."

The word "offense" is used in § 3651 only for the purpose of defining the types of offenses for which the court can grant probation (*i. e.,* "any offense not punishable by death or life imprisonment" 18 U.S.C. § 3651). Used in this sense, "offense" cannot

States, 354 F.2d 752 (10th Cir., 1965); United States v. Pisano, 266 F.Supp. 913 (E.D., Pa., 1967).

The majority discounts the applicability of *Fox* and *Pisano* correctly noting that those cases dealt not with separate indictments transferred under Rule 20, F.R.Cr.P., but with separate counts of the same indictment. The simple words of § 3651 do not support this distinction, however. § 3651 provides that "[p]robation may be limited to one or *more counts or indictments.*" (Emphasis added.) No basis for distinction between separate counts of the same indictment and entirely separate indictments is implied in § 3651. Accordingly, Judge Garth's conclusion that the *Fox-Pisano* construction of § 3651 is inapplicable in the "separate indictments" context is, in my view, unwarranted.

Without a shred of support, the majority next concludes that if there had been no Rule 20 transfer "[w]e do not believe that 18 U.S.C. § 3651 would have precluded the Alabama District Court from imposing a five year probationary term, to follow a five year probationary term imposed on petitioner by the District Court in Pennsylvania".[2]

There are several problems with this argument. First, although petitioner Lancer requested the transfer, Rule 20 provides that the United States Attorney from each district involved must approve the transfer. Clearly, a Rule 20 transfer is not an independent procedure by which a defendant can frustrate a government plan to impose stringent penalties.

Second, the majority advances no support for its conclusion that § 3651 would have permitted an Alabama district court not only to suspend sentence but also to suspend commencement of probation for five years. If § 3651 authorizes this, it is far less evident to me than the majority suggests.

Third, I do not think the majority's position is supportable on a policy basis.[3] Probation is a form of punishment which abridges a defendant's liberty. Korematsu v. United States, 319 U.S. 432, 435, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943). Though it is a mild and ambulatory mode of punishment, probation nonetheless results in extending the potential period during which a defendant's liberty may be restrained. This is necessarily so because once probation is revoked, a defendant may be required to serve his original sentence *without credit* for the time spent on probation.[4] If in addition to imposing consecutive sentences, the district court is allowed to impose consecutive five-year probationary terms, the potential period of restraint may be increased far in excess of the maximum

be equated solely with "indictment"; separate *counts* of a multiple count indictment may each involve separate "offense[s] not punishable by death or life imprisonment." *E. g.*, Fox v. United States, 354 F.2d 752 (10th Cir., 1965). *Cf.* Fed.R.Crim.P. 8(a) which permits (although does not require), in certain situations, two or more offenses to be charged in the same indictment.

More importantly, however, the mere fact that § 3651 defines the type of "offense" for which probation may be granted, does not permit the inference that consecutive probationary terms, exceeding five years in total duration, may be imposed for each offense, especially when such inference would be inconsistent with the language of § 3651 quoted in the text. *Cf.* Roberts v. United States, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943)

(provisions of the probation statute must be read together in a consistent fashion).

2. Majority Opinion at pp. 735–736, *supra.*

3. Majority Opinion at p. 736, *supra.* Although the majority opinion addresses policy issues identical to those raised here, it feels bound by current law to reach a result other than that dictated by sound policy considerations. No support for the majority's reading of the law is advanced, however. Since the issue is clearly one of first impression, I think the statute should be read to reach a sensible result which is consistent with the purpose of probation cited here in the text and *infra*, n. 5.

4. This has been held not to offend double jeopardy. *E. g.*, United States v. Fultz, 482 F.2d 1 (8th Cir., 1973) and cases cited therein.

sentence to which the defendant is subject.

I find nothing to indicate that this was the intent of Congress. To the contrary, the language and purpose [5] of § 3651 clearly suggest that five years of probation is adequate to determine whether a defendant has become sufficiently adjusted and rehabilitated to permit his complete release into society. As the Supreme Court noted in *Korematsu*, "[p]robation, like parole, 'is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency.' " [6] Whenever a district court considers a five-year probationary term insufficient the defendant is simply not a "good social risk." In such a situation imprisonment followed by parole may be a better alternative. To impose consecutive five-year probationary terms, and increase accordingly the potential period of restraint, does not seem compatible with a policy of affording the "unfortunate another opportunity by clemency."

As such, I believe the district court erred in imposing consecutive probationary terms in excess of five years. I would therefore void the excessive portion of the probationary term.

FORMAN, Circuit Judge (dissenting):

I concur with Judge Hunter's view that 18 U.S.C. § 3651 [1] does not permit five-year probation terms to be imposed consecutively. I feel compelled, however, to register additional disagreement with the majority's view that 18 U.S.C. § 3653 [2] and 18 U.S.C. § 4208(b) [3], when read in combination, permit a new probation term to be imposed following probation revocation. [4]

I agree that when Lancer's probation under Indictment 22119 was revoked he could have been imprisoned, in accordance with 18 U.S.C. § 3653, for a term not exceeding the unserved portion of his valid one-year sentence. Instead of requiring Lancer to serve the sentence originally imposed, however, the District Judge chose to commit him to the custody of the Attorney General for a three to six month study, citing 18 U.S.C. § 4208(b) as authority. Four months later, when the study was completed, the District Judge suspended execution of the remainder of the one-year sentence [5] and placed petitioner on a new four-year and ten-month term of probation [6], again citing Section 4208(b) as authority.

---

5. For a discussion of the history of the Probation Act *see* United States v. Murray, 275 U.S. 347, 357, 48 S.Ct. 146, 72 L.Ed. 309 (1928); Frad v. Kelly, 302 U.S. 312, 58 S.Ct. 188, 82 L.Ed. 282 (1937); Roberts v. United States, 320 U.S. 264, 272, 64 S.Ct. 113, 88 L.Ed. 41 (1943).

These cases imply that the purpose of probation is to prevent unhardened offenders from being contaminated by contact with criminal elements encountered in prison. Probation is not intended to give a judge supervisory powers over the defendant for an indefinite period of time. Judges are ill-equipped to deal with the day to day management of too many offenders. The intent of probation is rather to give the judge a time period in which to assess the likelihood that this defendant can be rehabilitated without prison. This purpose is thwarted, in my view, by consecutive probationary terms.

6. Korematsu v. United States, 319 U.S. at 435, 63 S.Ct. at 1126, *citing* Zerbst v. Kidwell,

304 U.S. 359, 363, 58 S.Ct. 872, 82 L.Ed. 1399 (1938).

1. See note 2 of the majority opinion.

2. See note 3 of majority opinion.

3. See note 4 of the majority opinion.

4. See pp. 726–730 of the majority opinion.

5. The District Judge believed that the sentence he was suspending was of nine years and ten months duration. Consonant with the majority's treatment, what the District Judge purported to do has been translated into what he was permitted to do. See the discussion of Lancer's maximum sentence in Part III of the majority opinion.

6. The four year and ten month probation term imposed under Indictment 22119 was to be followed by a consecutive five year probation term under Indictment 22173. See reference to the District Judge's order dated April 9, 1968 at pp. 723, 724 of the majority opinion.

From this peculiar sequence of events the majority concludes that the District Judge had the power to reimpose a new probation term after revoking Lancer's first probation term. Stripped to its essentials, the majority holds that even though 18 U.S.C. § 3653 requires that a "sentence" be imposed following revocation of probation, the following three-step procedure permits reimposition of probation after its revocation: (1) Section 3653 requires the court to "sentence" a defendant following revocation; (2) Section 4208(b) authorizes a "sentence" which may be applied to Lancer; (3) Section 4208(b) permits imposition of probation following a three to six month diagnostic study.

I must take issue with the majority's determination that the District Judge had the power to commit Lancer to a diagnostic study under Section 4208(b) after revoking his probation. Section 4208(b) is not an independent provision. It must be read with 4208(a). Standing alone, Subsection (b) lacks the essential directives for its implementation. Only when read in conjunction with the introductory sentence in Subsection (a)— "Upon entering a judgment of conviction, the court . . . when in its opinion the ends of justice . . . require that the defendant be sentenced to imprisonment for *a term exceeding one year* . . .." [emphasis supplied]— do Subsections (b), (c) and (d) become intelligently operable. Notwithstanding the majority's contention to the contrary, it is critical that Section 4208(b) be read on Subsection (a), so that both are available only where the authorized maximum period of imprisonment exceeds one year.

The various subsections of Section 4208 were intended to form an interrelated package of flexible sentencing tools for the district judge who imposes the original sentence entered upon conviction. Subsection (a) permits the sentencing judge, at his discretion, "to share with the executive branch the responsibility for determining how long a prisoner should actually serve."[7] Instead of merely imposing sentence and leaving parole eligibility to standard statutory criteria,[8] the judge may fix a parole eligibility date at the time of sentencing or he may delegate parole eligibility to the parole board's discretion. In either event, a diagnostic study is then made under Section 4208(c) and its results are used by the parole board. Subsection (b) apparently evolved from Congressional recognition that in particularly complex cases[9] the sentencing judge would need detailed information on the prisoner's criminal and social background before selecting among the various sentencing alternatives. Thus, Subsection (b) permits the district judge to have a Section 4208(c) diagnostic study prepared while tentatively imposing the statutory maximum sentence. After a maximum period of six months allowed for completion of the study, final sentence must be imposed.

Examination of the legislative history of Section 4208(b) discloses that the subsection was intended only for the use of the district judge who imposes the original sentence *entered upon conviction.* The Senate Report notes that

---

7. Senate Report No. 2013 reprinted in 1958 U.S.Code Cong. & Admin.News, 85th Cong., 2d Sess., at p. 3892.

8. Statutory criteria for a federal prisoner's parole eligibility are delineated in 18 U.S.C. § 4202.

9. In the ordinary case rule 32(c), Federal Rules of Criminal Procedure, provides that:

    (1) The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. . . .

    (2) The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the Court. . . .

[Subsection (b)] would permit the court, in particularly complex cases, to commit the defendant to the Attorney General for a 3- to 6-month study. After the court had received a summary of the Attorney General's findings, it could impose final sentence under any applicable statute. In effect this provision extends to a maximum period of 6 months in selected cases the court's power to modify the sentence, now restricted to 60 days under rule 35, Rules of Criminal Procedure . . . .[10]

Thus, Congress did not intend the study provisions of Sections 4208(b) and (c) to be used by district judges at any later stage of a criminal proceeding. Rule 35, as it existed at the time of the Senate Report, dealt only with a time limit within which the district judge was required to finalize the original sentence.[11] The Senate's reference to Rule 35 indicates that the exclusive concern of Subsection (b), as in Subsection (a), was the process of imposing the original sentence.

The notion that the various subsections of Section 4208 were intended to form a coordinated package of tools for use in the original sentencing process is further supported by a letter appended to the Senate Report. The Administrative Office of the United States Courts noted that:

The Judicial Conference feels that the sentencing judge before imposing final sentence, should be able to receive if he deems advisable a more complete study of the defendant than is available in the presentence investigation report. This observation and

diagnosis would be extremely helpful to the court in making disposition in certain types of cases; particularly where a difficult medical, psychiatric, sex, or rehabilitative problem may be involved. Facilities for such observation and study are in existence but authority is lacking for the court to change a sentence after 2 months. This may not afford time to complete such a study. The proposed amendment would make the opportunity more certain.[12]

The majority's determination that Subsection (b) may be used to diagnose those whose sentence is one year or less hinges on its argument that "[c]omplicated factors, which a study by the Bureau of Prisons is designed to sort out, are just as likely to be present when the offense committed carries a maximum sentence of less than one year." This argument ignores the point that the one-year limitation is unrelated to the presence or absence of "complicated factors." Such factors are just as likely to be found in cases where a study is made under Subsection (a), yet the majority acknowledges that Subsection (a) is governed by the one-year maximum sentence limitation. The clear reason for the limitation, as admitted by the Government in its supplemental brief in this case, is that "[v]ery little purpose would be served by causing a defendant whose maximum term is one year or less to undergo a six month diagnostic study."

Since Lancer's sentence could not have been for more than one year, he could not have been properly committed under Section 4208. Therefore, I cannot accept the majority's three-step analysis whereby it concludes that, by using Section

---

10. 1958 U.S.Code Cong. & Admin.News, 85th Cong., 2d Sess. p. 3892. A similar statement appears in the House Conference Report. *See Id.* at pp. 3905–3906.

11. As it existed in 1958, Rule 35, Fed.R. Crim.P., provided:

The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is

imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the Supreme Court denying an application for a writ of certiorari.

12. 1958 U.S.Code Cong. & Admin.News, 85th Cong., 2d Sess. p. 3898.

4208(b), a new probation term could have been imposed following probation revocation.

Despite the resistance of the majority to do so, it is imperative that there be a resolution of the question: Is probation a "sentence" which may be imposed under the authority of 18 U.S.C. § 3653 following probation revocation? An examination of Sections 3651 (imposition of probation) and 3653 (revocation of probation) reveals that Congress has clearly distinguished between the terms "probation" and "sentence." Section 3651 permits the district court to "suspend the . . . execution of [the imposed] *sentence* and place the defendant on *probation* . . .." Section 3653 gives the district court the power to "revoke the *probation* and require [the defendant] to serve the *sentence* [originally] imposed [but suspended under Section 3651], or any lesser *sentence* . . .." [Emphasis supplied.] In the face of this clear legislative distinction it must be concluded that the district court's power to

"sentence" under Section 3653 following probation revocation does not encompass the power to suspend sentence again and reimpose probation.[13] *Accord* United States v. Fultz, 482 F.2d 1 (8th Cir. 1973); Fox v. United States, 354 F.2d 752, 754 (10th Cir. 1965); United States v. Buchanan, 340 F.Supp. 1285 (E.D.N.C. 1972); *cf.* Roberts v. United States, 320 U.S. 264, 266, 64 S.Ct. 113, 88 L.Ed. 41 (1943).

Finally, as to the disposition of the six indictments, 22153, 22160, 22163, 22164, 22172 and 22228, I agree with the majority that suspending imposition of sentence without placing the defendant on probation is a nullity. Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). Instead of the majority's mere suggestion that the District Judge dispose of these indictments, I would require that he do so. I would grant the motion to vacate sentence on all eight indictments and remand for disposition consistent with the views of Judge Hunter and those expressed herein.

13. Mr. Eugene N. Barkin, Legal Counsel to the Bureau of Prisons, in a statement quoted by the majority at p. 730 of its opinion, seems to agree with this point:

It seems to me that the language of [Section 3653] makes it quite clear that once having revoked probation, the court must then impose a sentence. It may not revoke and thereupon reinstate the defendant to probation. . . .

Barkin, Sentencing the Adult Offender, Fed. Probation Q., June 1962, at 13–14.

Mr. Barkin goes on to argue that probation may be reimposed following probation revocation through the use of Section 4208(b). He does not inform us, however, whether he would adopt the majority's theory that Section 4208(b) is available where the term of imprisonment may not exceed one year.