Randall Harding HALL

v.

Edward D. SCHAEFFER and Kathryn A. Lynott, et al.

Civ. A. No. 81–4973.

United States District Court, E.D. Pennsylvania.

Jan. 28, 1983.

Charles Sovel, Philadelphia, Pa., for plaintiff.

Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

Plaintiff, a criminal defendant, has sued his former federal probation officer under 42 U.S.C. § 1983, alleging that on June 23, 1980, she wrongfully petitioned the sentencing judge for a warrant for his arrest for probation violation when she knew or should have known that his term of probation had already expired.[1] A detainer issued and plaintiff was placed in federal custody. He contested the detainer and moved on November 5, 1980, to vacate his sentence pursuant to 28 U.S.C. § 2255 on the basis that there was no subsisting probation. By response filed November 17, 1981, the United States Attorney's Office did not oppose the motion. The motion was then granted by Judge Clarence E. Newcomer on November 20, 1981, rendering moot the violation of probation charge.

The probation officer has moved for summary judgment in the instant complaint asserting that she is not personally bound by the actions of the United States Attorney in failing to oppose the motion to vacate, that she is immune from a suit for damages and, finally, that as of June 23, 1980 the federal probation period had not expired because plaintiff's intervening incarcerations in state court jurisdictions had tolled it.

## DISCUSSION

■ For the purposes of this case it is assumed that plaintiff's period of probation

---

**1.** Since Hall was already in custody in Delaware County at the time, the petition operated as a request for a federal detainer.

commenced May 19, 1975.[2] The first issue to be decided is whether defendant Lynott is precluded from raising individual defenses by the U.S. Attorney's failure to oppose Hall's motion to vacate his sentence. Since Lynott is being sued for damages under § 1983 upon charges that she acted in bad faith and without probable cause, I find that she, personally, is not bound by the Government's decision not to contest Hall's motion to vacate his sentence. It would be inconceivable that a probation officer acting within the scope of her duties could be found liable for a subsequent decision of the U.S. Attorney's Office, in this case made over a year after the initial request for a detainer was filed.[3]

**2.** Hall was sentenced on May 9, 1975 as follows:

> As to Count 1: ... six (6) months. As to Counts 13 and 24, the imposition of sentence is suspended, and the defendant is placed on probation for a period of five (5) years; the terms and conditions of the probation are that defendant abide by the rules and regulations of the Probation Department, the laws of the City, State and United States.
> The defendant to report to the U.S. Marshal for the Eastern District of Pennsylvania, U.S. Courthouse, 9th and Market Streets, Phila., Pa. on Monday, May 19, 1975 at 10 A.M. to commence serving his sentence.

In defendant Lynott's Motion to Dismiss, she states that probation began October 6, 1975, upon Hall's reporting to Philadelphia after his release from federal prison in Texas. Hall contends that probation commenced on May 19, 1975. In determining when a probation period begins to run, the controlling consideration is the intention of the court imposing the sentence which is to be found in the language creating the probationary status. *Sandford v. King,* 136 F.2d 106 (5th Cir.1943). In *Sandford,* a sentence was imposed in which no specific mention was made of when probation was to commence. The respondent contended that the probationary period should be held to have commenced on the day the petitioner was released from state custody since the petitioner could not have been put under federal supervision during his custody in the state penitentiary. *Sandford* at 107. The petitioner, who was already in jail on another sentence, maintained that the period of probation started on the date of sentencing. *Id.* The court concluded,

> We think that if the court had intended to defer the beginning of the period of probation he would have said so, and that his failure so

◾ The question remains whether there had been a tolling of Hall's probation at the time defendant Lynott petitioned Judge Newcomer for the issuance of a warrant for Hall's arrest. It is undisputed that if a defendant is in violation of his probation, it tolls the running of the term. *See United States v. Green,* 429 F.Supp. 1036, 1038 (W.D.Tex.1977). As stated in *Green,* "It would be unreasonable to conclude that a probationer could violate conditions of probation and keep the clock running at the same time, thereby annulling both the principle and purpose of probation." *Green* at 1038. *See also United States v. Gerson,* 192 F.Supp. 864 (E.D.Tenn.1961), *aff'd* 302 F.2d 430 (6th Cir.1962). In *United States v. Lancer,* 508 F.2d 719 (3d Cir.1975), *cert.*

> to do evidenced his purpose that the probationary period should begin on the day the sentence was imposed. It is, therefore, our view that the probationary period should begin on the day the sentence was imposed. *Id.* at 108. In *Gaddis v. United States,* 280 F.2d 334 (6th Cir.1960), the court, relying in part on *Sandford,* stated, "Where there is any ambiguity, the prisoner is entitled to have the language in the pronouncement construed most favorable [sic] to him. In the absence of express language in the pronouncement of sentence fixing the date of commencement of probation, it is deemed to commence when the Judge imposes the sentence. *Gaddis* at 336. *Accord, Engle v. United States,* 332 F.2d 88 (6th Cir.1964), *cert. denied,* 379 U.S. 903, 85 S.Ct. 192, 13 L.Ed.2d 176 (1964). In light of these decisions, the language used by Judge Newcomer to create the probationary status, and the Government's lack of opposition to Hall's motion to vacate sentence, the assumption is warranted that Hall's probation began on May 19, 1975, the date on which he was to commence serving his sentence.

**3.** Plaintiff states in his letter of June 22, 1982, incorporated in his answer to defendant's motion to dismiss, that Lynott's "awareness can be demonstrated by [her] letter of July 1979, in which she requests the court to withdraw the then pending revocation request and states that *'you will continue on probation until expiration in May of 1980.'* " (emphasis in Hall's letter). This letter is not part of the record. More importantly and as will be discussed below, this letter could not be binding on a probation officer if the period of probation was validly extended.

*denied,* 421 U.S. 989, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975), the court stated that "[i]n the absence of express direction by the sentencing court concerning the time when probation is to commence (and its relation to intervening jail time, parole, etc.), probation would be tolled during periods [when the probationer was in jail] and would resume upon release from confinement." *Lancer* at 733 n. 42. Periods of confinement or custody may also include time spent in jail for offenses unrelated to the original conviction. *Id.* at 733–34.

Since probation commenced May 19, 1975 and the petition for the detainer was dated June 23, 1980, defendant would have to show that Hall's probationary period was tolled for at least thirty-five (35) days in order for him to have still been on probation as of June 23, 1980 (12 days in May plus 23 days in June). *See* Plaintiff's Supplemental Memorandum at pp. 1–2.

Pursuant to the court's order of October 4, 1982, defendant Lynott submitted an affidavit to show the period of time which plaintiff was allegedly in violation of the terms and conditions of his probation by reason of his arrests and confinement in various correctional facilities.[4] Relying

---

4. The affidavit contains the following information:

I, Kathryn A. Lynott, United States Probation Officer, being duly sworn according to law, do hereby depose and say that the following is a compilation of information obtained from the United States Probation Officer's file on Randall Hall with regard to arrests, periods of confinement, correctional institutions wherein he was confined, charges and disposition of same, while he was under our supervision:

| | Date | Institution | Charge and Disposition |
|---|---|---|---|
| 1. | 5/19/75 – 10/3/75 | Phila. Detention Center and Texarkana Federal Correctional Institution | Interstate transportation or falsely made securities; Count I – guilty plea. |
| 2. | 2/13/76 – 5/20/76 | New Holland, PA | forgery, receiving stolen property; $3,000 bail not posted; charges nolle prossed. |
| 3. | 11/16/76 – 1/20/77 | Union County Prison | check offenses (this information was received from Hall's wife); charges dismissed. |
| 4. | 1/20/77 – 3/16/77 | Transferred to Monmouth County Jail | possession of stolen property and uttering forged instrument; released on bail; 10/27/78 – convicted sentenced to 3 years probation, $500 fine, $14 court costs. |
| 5. | 7/1/77 – 8/16/77 | Delaware County Jail Springfield, PA | forgery and tampering with records; held in lieu of bail in interim because of bench warrant issued on 11/29/76 by Delaware County Court in Ridley, Township, Pa. (1/31/78) (charges nolle prossed); posted $5,000 surety bail when bench warrant withdrawn 10/28/77 charges dismissed. |
| 6. | 3/20/78 – 3/23/78 | Delaware County Jail | forgery, bad checks, criminal conspiracy and receiving stolen property; posted $25,000, 10% cash bail; 5/23/79 charges nolle prossed. |
| 7. | 4/24/78 – 6/28/78 | Delaware County Jail | bench warrant issued 4/17/78 by Monmouth County judge; posted $7,500, 10% cash bail; refused extradition to New Jersey. |
| 8. | 7/26/78 – 8/4/78 | Delaware County Jail | arrested on governor's warrant; ordered extradited to New Jersey. |
| 9. | 8/4/78 – 10/27/78 | Transferred to Monmouth County Jail | held pending final disposition of charges on number 4 above; convicted; sentenced to 3 years probation, fine $500, $14 court costs. |
| 10. | 8/21/79 – | Delaware County Jail | distribution of controlled substance; posted $1,000, 10% cash bail; 11/21/79 convicted – bail increased pending sentencing. |

upon *Lancer,* defendant asserts that this court may consider for purposes of tolling the periods of time Hall spent in custody, transfers from one correctional facility to another, and time involved for transfers to the probable cause hearings for federal probation violations.[5] Plaintiff, on the other hand, contends, *inter alia,* that *Lancer,* cannot be read to include *any* periods of confinement but only those pursuant to a conviction and sentence.

■ Plaintiff's construction of *Lancer* is too narrow. If a probationer, because of his own wrongdoing, is outside the supervisory jurisdiction of probation authorities, *see United States v. Workman,* 617 F.2d 48, 51 (4th Cir.1980), or if he justifiably spends time in custody for a violation of probation, be it in a state or federal institution, the time is not counted as time spent on probation. *See Lancer* at 734; *United States v. Gelb,* 175 F.Supp. 267, 269 (D.D.C.1959), *aff'd,* 269 F.2d 675 (2d Cir.1959), *cert. denied,* 361 U.S. 822, 80 S.Ct. 66, 4 L.Ed.2d 66 (1959) (intervening federal confinement); *United States v. Gerson,* (intervening state confinement). The fact that Hall's probation was not "revoked" due to his various arrests, does not, as plaintiff contends, distinguish this case from *Lancer.* Revocation of probation is not essential for tolling. Rather, it is the violation of probation regardless of whether the violation leads to time spent in custody. *See, e.g., United States v. Green,* 429 F.Supp. at 1037. *See also U.S. v. Workman* at 51.

■ Even if plaintiff were correct in his assertion that probation is tolled only upon periods of confinement pursuant to a conviction and sentence, it is readily seen from the undisputed affidavit submitted by defendant that Hall's probation was tolled more than thirty-five (35) days due to arrests for possession of stolen property and forgery offenses which led subsequently to conviction. These were clear probation violations. I refer specifically to the following periods: 1/20/77–3/16/77 (55 days) spent in jail in Monmouth County, New Jersey; 4/24/78–6/28/78 (65 days) spent in jail in Delaware County, Pennsylvania; 7/26/78–8/4/78 (9 days) spent in jail in Delaware County, Pennsylvania; and 8/4/78–10/27/78 (85 days) spent in jail in Monmouth County.[6] Taking only these periods of time into account, Hall's probation was tolled at least two hundred fourteen (214) days while he was rightfully in custody for charges relating to offenses committed in Monmouth County.

Plaintiff's contention that his periods of incarceration were not the result of sentences imposed by a court but were the result of being unable to post bail on the criminal charges, *see* Exhibit A to Plaintiff's Supplemental Memorandum at p. 1, is without merit. Plaintiff concedes that he was twice convicted of state crimes while

| Date | Institution | Charge and Disposition |
|---|---|---|
| 11. 10/7/79 – 4/3/80 | Delaware County Jail | simple and aggravated assault, attempted murder, possession of an offensive weapon; bail set at $2,500, 10% cash; state parole detainer lodged; 2/8/80 – federal detainer lodged charging, violation of probation; 2/26/80 – became federal prisoner having posted an appeal bond on drug conviction of 11/21/79; state parole detainer was lifted; Hall posted reduced bail on this attempted murder charge 2/28/80 – bail on violation of probation set at $10,000, 10% cash; bail posted 4/4/80, 3/26/80 – acquitted of attempted murder charge; 4/11/80 – final violation of probation hearing; probation continued. |

---

**5.** Defendant's assertion that time involved for transfers to probable cause hearings construes *Lancer* too broadly. While *Lancer* can be read to allow the consideration of time spent for custody transfers *following probation violations, see Lancer* at 733–34, (emphasis added)

it would stretch matters to argue that mere custody transfers to probable cause hearings constitute tolling events.

**6.** Refer respectively to numbers 4, 7, 8 and 9 in n. 4 *supra.*

on federal probation.[7] *Id.* The fact that he was not sentenced to jail as a result of these convictions, does not mitigate his violations of probation nor the time justifiably spent in the custody of government authorities pursuant to the crimes committed.

Thus, taking into consideration only those periods in which Hall was in custody related to charges which were not dismissed but which subsequently led to a conviction, his probationary period was extended approximately two hundred and fourteen (214) days beyond May 9, 1980. Accordingly, defendant Lynott did not wrongfully recommend to Judge Newcomer that a detainer issue for Hall's arrest for probation violation on June 23, 1980.

■ I also find that Lynott is entitled to quasi-judicial immunity from damages in this civil rights suit. *See Thompson v. Burke,* 556 F.2d 231, 236 (3d Cir.1977) (probation officers entitled to quasi-judicial immunity when engaged in adjudicatory duties; *cf. Robinson v. Largent,* 311 F.Supp. 1032, 1033 (E.D.Pa.1970) (initiation of detainer warrant when parolee has been charged with having committed a crime, is quasi-judicial function); *Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970), *cert. denied,* 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971) (a probation officer preparing and submitting a probation report in a criminal case is performing a "quasi-judicial" function and is entitled to similar, if not same, immunity accorded to judges for acts done in exercise of their judicial functions). A probation officer, like a parole officer, is acting as a judicial officer if he or she is performing discretionary duties within the framework of a quasi-judicial process. *See*

*Robinson* at 1033. When Lynott filed a petition seeking the arrest of Hall she was performing a discretionary function pursuant to her official law enforcement duties as a probation officer.

Since I have found that Lynott is entitled to quasi-judicial immunity, it is unnecessary to decide whether she acted in bad faith and without probable cause. *See Thompson v. Burke,* 556 F.2d at 238. *See also Coggins v. Carpenter,* 468 F.Supp. 270, 283 (E.D.Pa. 1979).[8]

Defendant Lynott is therefore entitled to entry of summary judgment in her favor.

---

7. Plaintiff concedes the conviction in Monmouth County for uttering a forged instrument. *See* item number 4 in note 4 *supra.* He also concedes the conviction in Delaware County for possession of a controlled substance with intent to distribute. *See* item 10, note 4 *supra.* The latter has not been included in the calculation since the affidavit submitted by Lynott only refers to one day—8/21/79. Hall's conviction on these charges, however, are conclusive of his having violated federal probation by his own acts, thereby extending his probationary period well beyond May 19, 1980.

8. Even if it were decided that Lynott was not entitled to quasi-judicial immunity, there would be sufficient evidence to support a claim for qualified immunity under *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) since I have determined that Hall was still on probation at the time the detainer was issued. Plaintiff's allegation that Lynott may have acted in bad faith when she misrepresented to Judge Newcomer that a state criminal charge against Hall had been dismissed, rather than that he had been acquitted, is irrelevant under the circumstances.